**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.:  9:19-cv-81140 - Civ _____

CITY OF LAKE WORTH BEACH,
FLORIDA,

       Plaintiff,

v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY and PETER T. GAYNOR, in his
official capacity,

       Defendants.

## COMPLAINT

Plaintiff, City of Lake Worth Beach, Florida ("Lake Worth" or the "City"), by and through its attorneys, files this Complaint against Defendants, Federal Emergency Management Agency and Peter T. Gaynor, Acting Administrator of the Federal Emergency Management Agency (collectively, "FEMA"), and alleges as follows:

1.     This is an action for judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* of FEMA's July 23, 2018 decision to refuse to consider Lake Worth's administrative appeal of FEMA's denial to grant Lake Worth certain disaster assistance funding.

2.     Lake Worth challenges FEMA's decision to deobligate and require Lake Worth to refund $4,255,966.93 in disaster assistance funding previously awarded to, and spent by, Lake Worth for Public Assistance-eligible emergency work completed following Hurricanes Frances, Jeanne, and Wilma in 2004 and 2005.  By taking back previously awarded funds, FEMA violated Section 705(c) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42

1

U.S.C. §§ 5121, *et seq.* (the "Stafford Act"), which states that a local government "shall not be liable for reimbursement or any other penalty for any payment made under this Act" when the statutory tests in § 705(c) are met.

3.     Lake Worth filed its appeals timely and in accordance with all appeal procedures and deadlines required by FEMA regulations and policies.

4.     The sole rationale for FEMA's refusal to consider the appeals is that FEMA's grant administrator in Florida, the Florida Division of Emergency Management ("FDEM"), missed its regulatory deadlines for forwarding the appeals to FEMA in 2012 and 2013.  The City filed a second-level administrative appeal from this decision on September 20, 2018.  FEMA has not yet issued a decision on this appeal, although FEMA has indicated that it will restore funding of $18,329.00 of the $4,274,295.93 it had deobligated based on the Stafford Act's three year statute of limitations, as recently amended by the Disaster Recovery Reform Act.[1]

5.     By refusing to consider Lake Worth's appeals, FEMA denied Lake Worth's "RIGHT OF APPEAL" expressly provided by the Stafford Act.

6.     Lake Worth is aggrieved by FEMA's refusal to consider the merits of the appeals because it has a statutory right to fair and impartial consideration of its appeals, which demonstrated that the disaster recovery work performed and costs incurred by Lake Worth were properly documented and eligible for disaster assistance funding.

**PARTIES, JURISDICTION, AND VENUE**

7.     Lake Worth is a municipal corporation with its principal place of business located at 150 N.E. 2nd Avenue, Lake Worth, Florida  33441.

---

[1] On July 5, 2019, FEMA issued a Request for Information with this information and seeking additional information or arguments other than those presented in this Complaint—missing its own 90 day statutory and regulatory deadline again by several months—and reinforcing its refusal to reconsider its position on Grantee administrative delay.

8.     FEMA, an agency in the Department of Homeland Security, is the federal agency delegated the authority to administer the provisions of the Stafford Act.

9.     Peter T. Gaynor is the Acting Administrator of FEMA.  In that capacity, Acting Administrator Gaynor is responsible for the overall administration of FEMA.  Acting Administrator Gaynor is sued in his official capacity.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

11.     Defendants are subject to the personal jurisdiction of this Court.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because an agency of the United States is a defendant, a substantial part of the events or omissions giving rise to the claim occurred here, and Plaintiff resides here.

## REGULATORY BACKGROUND AND STATEMENT OF FACTS

### *The FEMA Public Assistance Program*

13.     FEMA's Public Assistance Program, authorized by the Stafford Act, provides federal financial assistance to state, local, and tribal governments and certain private non-profit organizations following a Presidential major disaster declaration.  42 U.S.C. § 5121, *et seq*.

14.     FEMA uses Project Worksheets ("PW") to document the scope of work and cost estimate for a disaster-related project funded by a FEMA grant under the Public Assistance Program.  FEMA updates PWs to reflect changes to the work or cost as more information, invoices, and other documentation reflecting the actual cost of approved work becomes available.  Each revised PW is assigned a new "version" number, with the initial PW version being "Version 0."

15.     The State "Grantee" serves as grant administrator of FEMA's subgrants to all eligible applicants in the Grantee's state, including facilitating all communication between

FEMA and subgrantees (each local government, tribal government, or private non-profit applicant for assistance is a "subgrantee") and all disbursements of approved disaster assistance funding.  44 C.F.R. § 206.202(b).  Once a PW is approved, FEMA obligates the federal funding for the work described in the PW.  Once obligated, funding is disbursed to a federal account to which the State Grantee has access (a "Smartlink" account).  When FEMA deobligates funds, FEMA electronically transfers the funds being deobligated from the Smartlink account (even though those funds had already been paid to the applicant) and places them in the Disaster Relief Fund where appropriated but unobligated funds reside.

*The Public Assistance Appeal Right*

16.     All applicants for federal disaster assistance have a statutory "Right of Appeal" from "[a]ny FEMA decision regarding eligibility for, from, or the amount of assistance" under the Stafford Act.  Stafford Act § 423 (42 U.S.C. § 5189a(a)).

17.     The Stafford Act provides a 60-day deadline within which the applicant must submit its appeal, (Stafford Act § 423(a); 42 U.S.C. § 5189a(a)), and a 90-day period within which FEMA "shall" render a decision on the appeal.   (Stafford Act § 423(b); 42 U.S.C. § 5189a(b)).  The State Grantee appeals section does not mention the State Grantee.

18.     FEMA's regulations implementing the Public Assistance Program create two levels of appeal—one to the applicable FEMA Regional Administrator (a "First Appeal"), and one to the Assistant Administrator for the Recovery Directorate at FEMA headquarters (a "Second Appeal").  44 C.F.R. § 206.206(b).

19.     The regulations also insert the State Grantee into the appeals process by requiring that applicants file all appeals with the State Grantee within 60 days after receipt of notice of the action that is being appealed.  The regulations then provide that the State Grantee "will review

4

and forward appeals from an applicant or subgrantee, with a written recommendation, to the FEMA Regional Administrator within 60 days of receipt."  44 C.F.R. § 206.206(a), (c)(2).

20.     The regulations specify that FEMA "will" take action on the appeal within 90 days after receipt from the Grantee.

21.     The regulations further insert a process by which FEMA may request additional information from an appellant through a request for information ("RFI") within 90 days following receipt of an appeal.  44 C.F.R. § 206.206(c)(3).  If FEMA requests information, then the regulations state that FEMA "will" dispose of the appeal within 90 days following either the receipt of the requested additional information, or expiration of the deadline for submitting the additional information.  44 C.F.R. § 206.206(c)(3).

*Hurricanes Frances and Jeanne – 2004*

22.     Hurricane Frances hit Florida in September 2004, when Floridians were still recovering from Hurricane Charley.  Frances was the size of Texas when it struck the east coast of Florida as a Category 2 hurricane.  With winds of 105 miles per hour, it crossed the peninsula slowly, dropping heavy rain and flooding ground already saturated from Charley.

23.     Frances snapped off the Lake Worth pier and, together with Hurricane Jeanne which followed shortly after, scattered more than 100,000 cubic yards of debris across the City.

24.     Hurricane Jeanne made landfall just three weeks after Frances and in nearly the same spot as Frances.  Jeanne arrived as a Category 3 hurricane with winds over 120 miles per hour and caused additional damage and more debris throughout the City.

25.     President George W. Bush declared major disasters for Hurricane Frances and Hurricane Jeanne on September 4, 2004, and September 26, 2004, respectively, designating numerous counties eligible for FEMA Public Assistance funding, including Palm Beach County, Florida where Lake Worth is located.  69 F.R. 55171; 69 F.R. 59606.

*Hurricane Wilma – 2005*

26.     Hurricane Wilma struck South Florida in October 2005, preceded by Hurricanes Dennis and Katrina.  Wilma was the fourth major hurricane to impact the United States in 2005, and it was one of the most intense tropical cyclones recorded in the western hemisphere and the second-most destructive hurricane of the 2005 season.

27.     Wilma made landfall in Florida on October 24, 2005 and was so large that it left up to 98% of South Florida without power and caused more than $20 billion in damages.

28.     Powerful winds and heavy rain from the storm left substantial debris throughout the City and damaged multiple public facilities.

29.     President George W. Bush declared a major disaster on October 24, 2005, designating numerous counties eligible for FEMA Public Assistance funding, including Palm Beach County, Florida, where Lake Worth is located.  70 F.R. 67187.

*Damage in Lake Worth*

30.     Lake Worth sustained extensive damage during the 2004 and 2005 Hurricanes.

31.     The three hurricanes' high winds, heavy rain, and local tornados knocked down trees and power lines, deposited debris in public rights of way, and damaged critical public facilities, including roads, traffic lights, and other public buildings.  Residents and City facilities also lost power.

*FEMA Approval of Funding for Lake Worth*

32.     Pursuant to 44 C.F.R. §§ 206.2 and 206.222, Lake Worth is a local government eligible to apply for FEMA Public Assistance grant funding.

33.     Because Lake Worth was located in a designated disaster area and owned and operated facilities damaged by Hurricanes Frances, Jeanne, and Wilma, the City was eligible for disaster assistance funding under FEMA's Public Assistance program.

34.     Work to remove debris that poses immediate threats to life, public health and safety, and to protect improved property, as well as work to repair, restore, reconstruct, or replace Lake Worth's facilities damaged as a direct result of the declared disaster is eligible work under FEMA's Public Assistance Program.

35.     Lake Worth requested that FEMA provide Public Assistance Program funding for the costs of work to address disaster-related damages in the City.

36.     FEMA prepared a number of PWs approving funding for Lake Worth arising from the 2004 and 2005 hurricanes.  Twenty five of these PWs are the subject of this Complaint:

      a.     For Hurricane Frances, PWs 470, 1336, 6405, 602, 4237, 1286, and 2646;

      b.     For Hurricane Jeanne, PWs 3783, 2766, 2387, and 2386;

      c.     For Hurricane Wilma, PWs 6477, 8398, 5166, 8511, 8472, 3651, 5192, 8279, 3429, 3830, 8443, 4536, and 5590.

37.     These PWs (collectively, the "PWs") funded Lake Worth's costs incurred to remove debris from locations throughout the City, to repair and restore the City's electrical grid, and to repair various damaged public facilities.

38.     The costs included in the initial version of these PWs reflected FEMA-approved estimates of Lake Worth's actual costs to complete debris removal, electrical repair, and facility repair work.

39.     Lake Worth completed the projects outlined in the scope of work for the PWs in the timeframe provided by the PWs, and requested reimbursement from FEMA through FDEM for the costs it incurred in performing this work.  After review of this documentation, FDEM drew down from FEMA's Smartlink account and reimbursed Lake Worth for the costs expended in accordance with the approved grant.

40.     This action constituted an authorization of payment by approved agreement specifying the costs.  Recovery Policy FP 205-081-2, Stafford Act Section 705, Disaster Grant Closeout Procedures, at 5 (Mar. 31, 2016); *see also South Fla. Water Mgmt. Dist. v. FEMA*, No. 13-80533-CIV, 2014 WL 4805856 (S.D. Fla. Sept. 18, 2014).

*FEMA Denial of Funding for Lake Worth*

41.     In December 2011, FEMA prepared closeout versions of PWs 470, 1336, and 6477.  Closeout is the process by which FEMA determines that all applicable administrative actions and all required work of the award have been completed.  On closeout, more than seven years after Hurricane Frances and six years after Hurricane Wilma, FEMA deobligated $3,119,435.94 based on a variety of alleged eligibility issues (the "Closeout Deobligations").

42.     Then, in November and December of 2012 the Department of Homeland Security Office of the Inspector General ("OIG") issued Audit Reports, OIG Audit DA-13-04 and OIG Audit DA-13-08 (the "OIG Audit Reports"), respectively, recommending that FEMA deobligate over $8 million in costs expended by Lake Worth in the wake of Hurricanes Frances and Jeanne, and Wilma—now eight and seven years after the storms, respectively.

43.     OIG Audit DA-13-08 recommended that FEMA deobligate $470,244 under the Frances and Jeanne PWs for charges that OIG believed were unsupported project costs, ineligible labor costs and activities covered by insurance, incomplete small project work, and ineligible non-disaster activity costs.

44.     OIG Audit DA-13-04 recommended that FEMA deobligate $7.7 million under the Wilma PWs for charges that OIG believed were associated with contracts not procured in accordance with federal requirements, unsupported project costs, ineligible costs covered by insurance and for incomplete small project work, and ineligible labor costs.

45.     FEMA prepared new versions of the PWs to deobligate $1,154,859.99 in response to the OIG Audit Reports (the "OIG Audit Deobligations").

46.     The following is a summary of all of the PWs:

| Storm | PW # | Type of Work | Obligated Amount | Total Deobligated | Reason for Deobligation |
|---|---|---|---|---|---|
| Frances | 470 | Debris Removal | $2,152,331.80 | $1,927,591.61 | Eligibility |
| | 1336 | Debris Removal | $90,627.00 | $45,616.70 | Eligibility |
| | 6405 | Electrical Repair | $521,165.28 | $126,246.11 | OIG Audit |
| | 602 | Fishing Pier Repair | $3,285,502.17 | $16,105.00 | OIG Audit |
| | 4237 | Pool/Casino/Beach Repair | $11,238.77 | $3,253.00 | OIG Audit |
| | 1286 | Pool/Beach Repair | $4,022.92 | $1,730.00 | OIG Audit |
| | 2646 | Osborne Community Center Repairs | $17,801.66 | $17,801.66 | OIG Audit |
| Jeanne | 3783 | Electrical Repair | $1,200,408.81 | $282,264.00 | OIG Audit |
| | 2766 | Ballfields Repairs | $11,254.77 | $1,595.00 | OIG Audit |
| | 2387 | City Park Repairs | $4,372.17 | $4,372.00 | OIG Audit |
| | 2386 | City Park Repairs | $3,318.57 | $1,107.00 | OIG Audit |
| Wilma | 6477 | Debris Removal | $2,675,927.08 | $1,434,261.86 | Eligibility & OIG Audit |
| | 8398 | Electrical Repair | $1,370,964.11 | $204,594.00 | OIG Audit |
| | 5166 | City Cemetery Repairs | $31,737.53 | $27,008.00 | OIG Audit |
| | 8511 | Casino/Pool/Beach Repair | $51,765.96 | $ 4,273.40 | OIG Audit |
| | 8472 | Casino/Pool/Beach Repair | $46,340.76 | $46,340.76 | OIG Audit |
| | 3651 | City Park Fence Repairs | $2,632.50 | $2,632.50 | OIG Audit |
| | 5192 | Golf Course Repairs | $18,353.98 | $18,353.98 | OIG Audit |
| | 8279 | City Park Repairs | $42,953.75 | $42,953.75 | OIG Audit |
| | 3429 | Parking Meter Repairs | $21,755 | $14,555.00 | OIG Audit |
| | 3830 | Landfill Fence Repairs | $10,905.18 | $7,905.00 | OIG Audit |
| | 8443 | Pool House Repairs | $4,530.60 | $ 4,530.60 | OIG Audit |
| | 4536 | City Park Repairs | $11,375.85 | $3,949.00 | OIG Audit |
| | 5590 | City Park Repairs | $31,990.04 | $16,927.00 | OIG Audit |
| TOTAL Deobligated Amount | | | | $4,255,966.93 | |

*Lake Worth's Appeals*

47.     Lake Worth received notice of FEMA's Closeout Deobligations by letter dated December 21, 2011.

48.     At the time, Lake Worth received correspondence from FDEM via U.S. mail, therefore Lake Worth did not receive the letter until sometime after December 21, 2011.

49.     On February 7, 2012, less than 60 days after receipt of FDEM's letter, Lake Worth timely filed a First Appeal addressed to the FEMA Regional Administrator, Region IV, through FDEM in accordance with FEMA appeal regulations.  The First Appeal contested FEMA's decision to disallow funding and reduce the project costs in PWs 470, 1336, and 6477 at closeout.

50.     In a letter dated March 7, 2012, FDEM forwarded Lake Worth's First Appeal regarding PWs 470, 1336, and 6477 (the "Closeout Deobligations First Appeal") to FEMA Regional Administrator, Region IV.  Pursuant to FDEM's then standard practice with respect to appeals by applicants, FDEM did not notify or otherwise communicate with Lake Worth about this action.

51.     FDEM transmitted the Closeout Deobligations First Appeal within 60 days of its receipt of the appeal from Lake Worth.

52.     Lake Worth received notice that FEMA had made the OIG Audit Deobligations by letters from FDEM dated May 16 and 17, 2013.

53.     Lake Worth received correspondence from FDEM via U.S. mail, therefore Lake Worth did not receive the letters until sometime after the dates on the letters.

54.     On July 12, 2013, less than 60 days after receipt of FDEM's letters, Lake Worth timely filed a First Appeal of the OIG Audit Deobligations (the "OIG Audit Deobligations First Appeal") addressed to the FEMA Regional Administrator, Region IV, through FDEM in

accordance with FEMA appeal regulations.   The OIG Audit Deobligations First Appeal contested the decision to disallow funding and reduce the project costs in the PWs.

55.      In a letter dated July 19, 2013, FDEM forwarded Lake Worth's OIG Audit Deobligations First Appeal to FEMA Regional Administrator, Region IV.  Pursuant to FDEM's then standard practice with respect to appeals by applicants, FDEM did not notify or otherwise communicate with Lake Worth about this action.

56.      FDEM transmitted the OIG Audit Deobligations First Appeal within 60 days of its receipt of the appeal from Lake Worth.

57.      FEMA did not render a decision or issue a Request for Information on the First Appeals within 90 days of receipt of the appeals from FDEM.

58.      At no time in 2011, 2012, 2013, 2014, 2015, or 2016 did FEMA provide any notice or indication to Lake Worth or to FDEM that Lake Worth's First Appeals were untimely, or that FDEM had forwarded the appeals untimely.

59.      In 2014, after FEMA had taken no action on these First Appeals, FDEM resubmitted the First Appeals to Region IV to ensure that they were received.

60.      FEMA did not render a decision or issue a Request for Information on the First Appeals within 90 days of FDEM's re-submittal of Lake Worth's First Appeals contrary to FEMA's own statutory and regulatory deadline for deciding appeals.

61.      FEMA's compliance with its statutory and regulatory 90 day deadline for deciding appeals has been abysmal, particularly during the period in which Lake Worth filed the appeals at issue in this Complaint.  OIG Report No. OIG-10-26 (Dec. 2009); OIG Report No. OIG-11-49 (Mar. 2011).

a.  In December 2009, the OIG issued a report entitled "Assessment of FEMA's Public Assistance Program Policies and Procedures" (Report No. OIG-10-26) in which it noted that "FEMA takes excessive time to process appeals because it does not (1) adhere to, or has not set, timeliness standards for the appeal determination process; (2) have a standardized system to track appeals; and (3) offer an agency-wide mediation process for appeals that have reached impasse."  Report No. OIG-10-26 at 4.

b.  In March 2011, OIG issued a report entitled, "Opportunities to Improve FEMA's Public Assistance Appeals Process" (Report No. OIG-11-49) in which it once again noted that inconsistencies with FEMA, within the Regions, and within the interactions between FEMA, the Regions, and the State Grantees created a system in which there was no standard appeals process nor adherence to timeliness standards by FEMA, the State Grantees, and subgrantees.

*FEMA's Response to Lake Worth's Appeals*

62.  FEMA issued a Request for Information to Lake Worth by letter dated January 20, 2015 (the "First RFI")—almost three years after Lake Worth filed its First Appeals and nearly a decade after Hurricane Wilma made landfall.

63.  In the First RFI, FEMA requested additional documentation and support for Lake Worth's position that the deobligations should be reversed.

64.  Lake Worth timely responded to the First RFI on June 12, 2015 pursuant to an extension requested from and granted by FEMA.  This submission included 8,817 pages of documentation in support of the appeals.

65.     FEMA did not render a decision or issue a Request for Information on Lake Worth's First Appeals within 90 days of its receipt of Lake Worth's response to the First RFI contrary to FEMA's own statutory and regulatory deadline for deciding appeals.

66.     More than two years later, FEMA issued a Second Request for Information to Lake Worth by letter dated November 8, 2017 (the "Second RFI")—five years after Lake Worth filed its First Appeals.

67.     In the Second RFI, FEMA for the first time raised the issue of timeliness, asserting that the record did not contain sufficient information documenting that FDEM transmitted Lake Worth's First Appeals within 60 days of receipt, as required by 44 C.F.R. § 206.206(c)(2).

68.     Lake Worth timely responded to the Second RFI on December 15, 2017.

69.     FEMA's compliance with its statutory and regulatory 90 day deadline for deciding appeals continued to be abysmal into 2017.  GAO Report No. GAO-18-143.

70.     The Government Accountability Office ("GAO") issued a Report in December 2017 summarizing the timeliness of FEMA's Public Assistance Appeals Processing in 2016 and 2017.  GAO-18-143.  GAO found that FEMA timely decided appeals only about ten percent of the time.

71.     Lake Worth's First Appeals were not within that ten percent.

72.     FEMA again did not render a decision or issue a Request for Information on Lake Worth's First Appeals within 90 days of receipt of Lake Worth's response to FEMA's Second RFI.

73.     FEMA issued a Third Request for Information to Lake Worth by letter dated April 9, 2018 (the "Third RFI")—now six years after Lake Worth filed its First Appeals and almost 14 years after Hurricanes Frances and Jeanne.

74.     In the Second RFI, FEMA again raised the issue of timeliness, asserting that the record did not contain sufficient information documenting that FDEM transmitted Lake Worth's First Appeals within 60 days of receipt, as required by 44 C.F.R. § 206.206(c)(2), and requested that the City provide information to enable FEMA to associate specific pages of the documentation provided in response to the First RFI with specific PWs.

75.     Lake Worth timely responded to the Third RFI on May 8, 2018.

76.     FEMA issued a First Appeal Determination on July 23, 2018, denying Lake Worth's First Appeals based solely on FDEM's alleged failure to transmit Lake Worth's First Appeals within 60 days of receipt, as required by 44 C.F.R. § 206.206(c)(2).

77.     FEMA refused to consider the substantive issues in Lake Worth's First Appeals, solely because FEMA did not receive the First Appeals from FDEM within 60 days of FDEM's receipt of the First Appeals from Lake Worth.

78.     FEMA claimed in its First Appeal Determination that it has consistently applied the filing deadlines to both Subgrantees and to Grantees since 2000.  (FEMA's reference to Subgrantee deadlines is irrelevant, as Subgrantee Lake Worth timely filed its First Appeals; only the Grantee FDEM's forwarding of the First Appeals was alleged to be delayed.)

79.     In fact, there are multiple instances since 2000 where FEMA has decided a late-forwarded appeal on substantive grounds.  FEMA did not have a consistent policy on either late filed (by applicant) or forwarded (by State Grantee) appeals during this period.  *See* Report No. OIG-10-26; Report No. OIG-11-49; and Report No. GAO-18-143.

80.     Additionally, FEMA policy provides grantees (here, FDEM) with the ability to waive administrative conditions where warranted, and to extend the appeal deadline where necessary to gather additional information.  Public Assistance Guide, FEMA 322, at 86 (2001) ("The State will review the appeal documentation and request additional information if necessary.  The State will then prepare a written recommendation on the merits of the appeal and forward that recommendation to FEMA within 60 days of its receipt of the appeal letter or receipt of additional information that it had requested.") (emphasis added).

81.     On September 20, 2018, less than 60 days after FEMA issued its First Appeal Determination, Lake Worth timely filed its Second Appeal through FDEM.

82.     In its Second Appeal, Lake Worth argued that FEMA's decision denied Lake Worth its statutory right of appeal, and the decision was contrary to law.  Stafford Act §§ 423, 325.  Lake Worth further argued that the decision to take back $4,274,295.93 previously awarded, spent, and reimbursed grant funding violated Stafford Act § 705(c).

83.     FDEM timely transmitted Lake Worth's Second Appeal to FEMA by letter dated October 9, 2018.

84.     FEMA did not render a decision on Lake Worth's Second Appeal within 90 days of receipt of the Second Appeal.

85.     On July 5, 2019, FEMA issued an untimely Request for Information to Lake Worth, seeking information related to additional possible § 705(a) statute of limitations violations.  FEMA also reinforced its refusal to reconsider its position on Grantee timeliness.

86.     The amount of relief requested in this Complaint differs from the amount at issue in the Second Appeal.  The Second Appeal included PWs 1336 and 4921, which both had deobligations associated with the OIG Audit findings.  FEMA, however, determined to reinstate

the full amount at issue for PW 4921 and a partial amount for PW 1336 pursuant to Stafford Act § 705(a) as amended by the 2018 Disaster Recovery Reform Act after the Second Appeal had been filed.   The amended § 705(a) requires that FEMA reinstate amounts deobligated in violation of the applicable statute of limitations.

## COUNT I

(Agency Action Contrary to Stafford Act § 705)

87.    Lake Worth incorporates by reference the allegations set forth in paragraphs 1 through 85 above as if fully set forth herein.

88.    The Stafford Act provides that a state or local government "shall not be liable for reimbursement or any other penalty" for Stafford Act grant payments if "(1) the payment was authorized by an approved agreement specifying the costs; (2) the costs were reasonable; and (3) the purpose of the grant was accomplished."  Stafford Act § 705(c); 42 U.S.C. § 5205(c).

89.    A payment becomes authorized by an approved agreement specifying the costs when FEMA approves and obligates a PW that specifies the costs for the work contained in the PW.   Recovery Policy FP 205-081-2, Stafford Act Section 705, Disaster Grant Closeout Procedures (Mar. 31, 2016); *see also South Fla. Water Mgmt. Dist. v. FEMA*, No. 13-80533-CIV, 2014 WL 4805856, at *9 (S.D. Fla. Sept. 18, 2014).

90.    FEMA approved and obligated funds for each of the PWs at issue.  After work on each of these projects was complete, the City submitted documentation of work performed and payments made to contractors, and FDEM released funds for payment of the costs associated with each of the PWs.

91.    FEMA also determined that the costs specified in each of the PWs at issue were reasonable.

92.     The OIG Audit Report upon which FEMA based its deobligations did not question the reasonableness of the costs in each of the PWs, it merely found errors FEMA made in determining whether certain costs were eligible or that Lake Worth had failed to comply with aspects of federal grant procurement regulations.

93.     The costs associated with each of the PWs at issue were reasonable.

94.     Lake Worth accomplished the purpose of the grant when it completed the projects associated with the scope of work for each of the PWs within the timeframe provided in the PWs.

95.     FEMA never questioned whether Lake Worth completed the work contained in the PWs for which the grant was issued.

96.     FEMA's deobligation of funds was contrary to Stafford Act § 705(c).

## COUNT II

(Agency Action Contrary to Stafford Act § 423)

97.     Lake Worth incorporates by reference the allegations set forth in paragraphs 1 through 96 above as if fully set forth herein.

98.     The Stafford Act affords applicants for Public Assistance an administrative "RIGHT OF APPEAL" from "any decision regarding eligibility for, from, or amount of assistance…within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance."  Stafford Act § 423(a); 42 U.S.C. § 5189a.

99.     Lake Worth timely appealed FEMA's decisions to deobligate $4,255,966.93 in costs under the PWs within 60 days of its receipt of notice of FEMA's decisions.

100.    FEMA's assertion in its Second Appeal Decision that it lacks the authority to decide the substantive issues of an appeal due to the State Grantee's alleged failure to timely

forward it, is inconsistent both with FEMA policy at the time of Hurricanes Frances, Jeanne, and Wilma, which permitted the State Grantee to extend the regulatory deadline provided in 44 C.F.R. § 206.206(c), and also with multiple FEMA decisions exercising its authority to review and to approve appeals even after a State Grantee had not forwarded the appeal with a recommendation within the 60 days provided in FEMA's regulation.

101.    As an agent of FEMA, designated by FEMA in regulation to receive and forward appeals to FEMA, any delay on the part of FDEM should be imputed to FEMA, not to Lake Worth.

102.    FEMA's Second Appeal Decision, which refused to consider Lake Worth's Second Appeal, denied Lake Worth's statutory RIGHT OF APPEAL.

103.    Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(a)(2).

104.    FEMA's denial of Lake Worth's Second Appeal of the PWs is a final agency action that is arbitrary, not in accordance with law, and in excess of its statutory authority under the Stafford Act.

### COUNT III

(Agency Action Contrary to Stafford Act § 325)

105.    Lake Worth incorporates by reference the allegations set forth in paragraphs 1 through 104 above as if fully set forth herein.

106.    Stafford Act § 325(a)(1) provides the "President shall provide for public notice and opportunity for comment before adopting any new or modified policy that—(A) governs implementation of the public assistance program administered by the Federal Emergency Management Agency under this chapter; and (B) could result in a significant reduction of assistance under the program."  Stafford Act § 325(a)(1); 42 U.S.C. § 5165c(a)(1).

107.    Stafford Act § 325(a)(2) (42 U.S.C. § 5165c(a)(2)) provides that "Any policy adopted under paragraph (1) shall apply only to a major disaster or emergency declared on or after the effective date on which the policy is adopted."

108.    Prior to 2017, FEMA had no policy requiring it to refuse to consider the merits of or deny appeals of public assistance decisions based on the failure of the State Grantee to timely forward an applicant's appeal to FEMA within the prescribed regulatory timeframe.

109.    Prior to 2017, FEMA considered the merits of numerous appeals of public assistance decisions even where the appeal was untimely forwarded to FEMA by the State Grantee.

110.    FEMA began automatically denying appeals as untimely when a State Grantee had not forwarded the appeal on time only in late 2016 or 2017, when the number of FEMA decisions doing so dramatically increased.

111.    By refusing to consider the merits of Lake Worth's timely appeals (and virtually all other appeals with a late forwarded appeal by the Grantee) solely because the appeals were forwarded by State Grantees more than 60 days after receipt, FEMA adopted a new or modified policy that governs the implementation of the Public Assistance program and results in a significant reduction of assistance to Lake Worth.

112.     FEMA's new or modified policy with respect to timeliness of appeals was adopted without public notice and comment, and was retroactively applied to a disaster declared in 2005, before adoption of this policy, in violation of Stafford Act § 325(a).

113.     By refusing to consider the merits of Lake Worth's timely filed appeals of the PWs FEMA has taken action contrary to Stafford Act § 325 adversely affecting Lake Worth.

114.     Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(a)(2).

115.     FEMA's denial of Lake Worth's Second Appeal of the PWs is a final agency action that is arbitrary, not in accordance with law, and in excess of its statutory authority under the Stafford Act, for which there is no other adequate remedy in a court.

## PRAYER FOR RELIEF

WHEREFORE, Lake Worth requests entry of final judgment:

(1)     setting aside FEMA's Second Appeal Decision as contrary to law and in violation of Stafford Act §§ 705(c), 423, and/or 325;

(2)     directing FEMA to restore funding in the amount of $4,255,966.93 which it deobligated in violation of the Stafford Act pursuant to Stafford Act § 705(c);

(3)     unless rendered moot by the Court's resolution of Plaintiff's § 705(c) claim, directing FEMA provide fair and impartial consideration of the merits of Lake Worth's First Appeals filed in 2012 and 2013 pursuant to Stafford Act §§ 423 and/or 325; and

(4)     awarding Lake Worth such other relief as may be just, proper, and equitable.

Respectfully submitted, this 12th day of August, 2019.

*/s/ Michelle F. Zaltsberg*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Ernest B. Abbott, Esq.
*Pro Hac Vice Application Pending*
901 K Street NW
Suite 900
Washington, DC  20001
Telephone:  (202) 508-3425
Facsimile:  (202) 220-2225
Email:  eabbott@bakerdonelson.com

Wendy Huff Ellard, Esq.
*Pro Hac Vice Application Pending*
One Eastover Center
100 Vision Drive
Suite 400
Jackson, Mississippi  39211
Telephone:  (601) 969-4681
Facsimile:  (601) 592-2405
Email:  wellard@bakerdonelson.com

Michelle F. Zaltsberg, Esq.
Florida Bar No. 72908
200 South Orange Avenue
Suite 2900
Orlando, Florida  32801
Telephone:  (407) 367-5433
Facsimile:  (407) 841-0325
Email:  mzaltsberg@bakerdonelson.com

*Counsel for Plaintiff City of Lake Worth Beach,
Florida*

*/s/ Carolyn S. Ansay*
TORCIVIA, DONLON, GODDEAU &
ANSAY, P.A.
Carolyn S. Ansay, Esq.
Florida Bar No. 0109622
Northpoint Corporate Center
701 Northpoint Parkway, Suite 209

West Palm Beach, Florida  33407
Telephone:  (651) 686-8700
Facsimile:  (651) 686-8764
Email:  cansay@torcivialaw.com

*Counsel for Plaintiff City of Lake Worth Beach, Florida*