**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Consolidated Case No. 9:19-CIV-81140-Singhal/Reinhart

| | |
|---|---|
| CITY OF PEMBROKE PINES, FLORIDA,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY and PETER T. GAYNOR, in his official capacity,<br><br>    Defendants. | Case No. 0:19-cv-62056 |
| CITY OF DEERFIELD BEACH, FLORIDA,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY and PETER T. GAYNOR, in his official capacity,<br><br>    Defendants. | Case No. 0:19-cv-62032 |
| CITY OF LAKE WORTH BEACH, FLORIDA,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY and PETER T. GAYNOR, in his official capacity,<br><br>    Defendants. | Case No. 9:19-CIV-81140 |

## REPORT AND RECOMMENDATION ON DEFENDANT'S CONSOLIDATED MOTION TO DISMISS (ECF 22)

Before the Court is the Defendant's Consolidated Motion to Dismiss Plaintiffs' claims. ECF No. 22. This matter was referred to the undersigned by the presiding District Judge for a Report and Recommendation. ECF No. 29. Lake Worth Beach, Deerfield Beach, and Pembroke Pines (hereinafter "the Cities") each filed a case against the Federal Emergency Management Agency ("FEMA") in the Fall of 2019. On October 24, 2019 the Cities' cases were consolidated.[1] ECF No. 19. The undersigned has reviewed the Motion (ECF No. 22), the Response (ECF No. 27), the Reply (ECF No. 28), the Plaintiff's Notice (ECF No. 34), the Response to the Notice (ECF No. 36), and the Reply (ECF No. 37). After oral argument, this matter is now ripe for decision.

Defendant moves to dismiss the Cities' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Complaints are shotgun pleadings and should be dismissed for that reason. Permitting leave to amend on at least some of the claims would not be futile, although, as currently pled, the Complaint fails to allege subject matter jurisdiction over any of the claims. Therefore, the undersigned RECOMMENDS that the District Court GRANT the Motion to Dismiss with leave to file an Amended Complaint.

### BACKGROUND

In 2004 and 2005 the Cities were hit by Hurricanes Frances, Jeanne, and Wilma. LWB Compl. ¶¶ 22, 24; DB Compl. ¶ 22; PP Compl. ¶ 22. President George W. Bush declared each hurricane a major disaster which enabled the Cities to apply for FEMA Public Assistance funding, authorized by the Stafford Act. LWB Compl. ¶ 25; DB Compl. ¶ 25; PP Compl. ¶ 25.

---

[1] The consolidated docket lacks entries for each complaint. Therefore, the court will cite to each complaint as follows: Lake Worth Beach, "LWB Compl.;" Deerfield Beach, "DB Compl.;" Pembroke Pines, "PP Compl."

Each City sought federal funding to mitigate hurricane-related damages in its City. LWB Compl. ¶ 37; DB Compl. ¶ 37; PP Compl. ¶ 33.

The State of Florida, through the Florida Division of Emergency Management ("FDEM") is the intermediary between the Cities and FEMA. FDEM applies for, and receives, the disaster assistance grant from FEMA; it awards funds to the Cities as subgrantees.[2] FDEM also serves as grant administrator, including facilitating all communication between FEMA and the subgrantees. 44 C.F.R. § 206.202(b); LWB Compl. ¶ 15; DB Compl. ¶ 15; PP Compl. ¶ 15.

FEMA uses Project Worksheets ("PW") to document the scope of work and cost estimates for projects seeking public assistance funding. LWB Compl. ¶ 14; DB Compl. ¶ 14; PP Compl. ¶ 14. Once a PW is approved, FEMA obligates the federal funding for the work described in the PW. *Id.* The obligated funds are deposited into a federal "Smartlink" account to which FDEM has access. *Id.* After the work authorized by the PW has been completed, FEMA executes a closeout process to ensure that all applicable administrative actions and required work have been completed, all contracts have been approved, and that all costs expended were reasonable. LWB Compl. ¶ 41; DB Compl. ¶ 41. Based on the closeout findings, FEMA can deobligate funds. Separately, after this closeout process, the Department of Homeland Security Office of the Inspector General ("OIG") audits the work and recommends whether FEMA should deobligate funds. If funds are deobligated, FEMA electronically transfers those funds out of the Smartlink account, which makes the funds no longer available to the grantee or subgrantees. *Id.*

Pursuant to § 423 of the Stafford Act and its implementing regulations, 44 C.F.R. § 206.206, a grantee or subgrantee can appeal FEMA's decision to deobligate. The statute states,

---

[2] In 2017, FEMA adopted new terminology. The words "grantee" and "subgrantee" were replaced with "recipient" and "subrecipient." 82 F.R. at 43 (1/3/2017). I use those terms interchangeably.

3

"Any decision regarding eligibility for, from, or amount of assistance under this subchapter may be appealed within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." 42 U.S.C. § 5189a(a); Stafford Act § 423(a). The regulations require the subgrantee to submit the appeal through the grantee. 44 C.F.R. § 206.206(a). The subgrantee must submit the appeal to the grantee within 60 days of receiving notice of the action being appealed. *Id.* § 206.206(c)(1). With exceptions not applicable here, the grantee must forward that appeal to the Regional Administrator within 60 days of receipt of the appeal. *Id.* § 206.206(c)(2). The FEMA Regional Administrator decides the First Appeal and the Assistant Administrator for the Disaster Assistance Directorate decides any appeal of the Regional Administrator's determinations. *Id.* § 206.206(b).

Here, FEMA prepared several PWs for the cities and approved funding for their disaster related projects.[3] LWB Compl. ¶ 36; DB Compl. ¶ 38; PP Compl. ¶ 34. After the work was completed, FEMA deobligated millions of dollars in costs expended by each of the Cities.[4] FDEM and the Cities were notified that FEMA intended to deobligate these funds.

This is where each Cities' factual allegations diverge.

a. **Lake Worth Beach**

Lake Worth Beach received notice of FEMA's closeout and OIG audit deobligations by letters dated December 21, 2011 and May 16 and 17, 2013, respectively. LWB Compl. ¶¶ 47, 52.

---

[3] Twenty-five of the PWs approved for Lake Worth Beach, four PWs approved for Deerfield Beach, and two PWs approved for Pembroke Pines are at issue in this case. LWB Compl. ¶ 36; DB Comp. ¶ 38; PP Compl. ¶ 34.

[4] In November and December of 2012, the OIG Audit Reports recommended FEMA deobligate over $8 million from Lake Worth Beach. LWB Compl. ¶ 42. In April of 2011, an OIG Audit Report recommended that FEMA deobligate almost $4 million from Deerfield Beach. DB Compl. ¶ 60. On July 13, 2007 the OIG Audit Report recommended that FEMA deobligate over $3 million from Pembroke Pines. PP Compl. ¶ 41.

Lake Worth Beach submitted its First Appeal of the closeout deobligations to FDEM on February 7, 2012 and submitted its First Appeal of the OIG audit deobligation on July 12, 2013. *Id.* at ¶¶ 49, 54. According to the Complaint, FDEM forwarded Lake Worth Beach's First Appeal of the closeout deobligations on March 7, 2012, less than 30 days after receiving the Cities appeal. *Id.* at ¶ 50. Additionally, FDEM forwarded Lake Worth Beach's First Appeal of the OIG audit deobligations on July 19, 2013, eight days after receiving the appeal from the City. *Id.* at ¶ 55. On July 23, 2018 FEMA denied Lake Worth Beach's First Appeal citing FDEM's failure to timely forward the City's appeal. *Id.* at ¶ 76. Lake Worth Beach filed its Second Appeal on September 20, 2018 and FDEM forwarded that appeal less than 20 days later on October 9, 2018. *Id.* at ¶¶ 81, 83.[5] FEMA has not rendered a decision on Lake Worth Beach's second appeal determination. *Id.* at ¶ 4.

### b. Deerfield Beach

Deerfield Beach received notice of FEMA's deobligations for three of the four PWs at issue by letter dated November 23, 2011 and notice of the fourth deobligation by letter dated February 10, 2012. DB Compl. ¶¶ 71, 74. On January 20, 2012 Deerfield Beach submitted its First Appeal of the deobligations. *Id.* at ¶ 73. FDEM forwarded Deerfield Beach's First Appeal on September 7, 2012, approximately 231 days after receiving it from the City. *Id.* at ¶ 77. On October 18, 2017 FEMA denied Deerfield Beach's First Appeal due to FDEM's alleged failure to transmit the appeal in a timely manner.[6] *Id.* at ¶ 88. Deerfield Beach filed its second Second

---

[5] FEMA disputes the factual allegations about the dates when FDEM forwarded the appeals. I need not address that issue, however, because (as explained below) this Court lacks subject matter jurisdiction over Lake Worth Beach's claims.

[6] Deerfield Beach appealed this decision arguing that it was contrary to law and procedurally deficient. FEMA agreed that the First Appeal Determination was procedurally deficient and remanded it back to the Region IV Administrator. FEMA again denied Deerfield Beach's First

Appeal on August 13, 2018 and was again denied on December 7, 2018 due to FDEM's alleged failure to timely forward the City's First Appeal.[7]  *Id.* at ¶¶ 102, 106.

### c. Pembroke Pines

Pembroke Pines received notice of FEMA's deobligation of PW 5332 on April 17, 2012 and of PW 3017 on June 1, 2012.  PP Compl. ¶ 45.  Pembroke Pines submitted its First Appeal of the PW 5332 deobligation on June 11, 2012 and the PW 3017 deobligation on June 30, 2012.  *Id.* at ¶¶ 47, 48.  FDEM forwarded both First Appeals on September 5, 2012, 68 days after Pembroke Pines' PW 3017 appeal and 87 days after its PW 5332 appeal.  *Id.* at ¶¶ 49-51.  On March 2, 2018 FEMA denied Pembroke Pines' First Appeal due to FDEM's alleged untimely forwarding of the City's appeal.  *Id.* at ¶ 67.  Pembroke Pines submitted its Second Appeal on April 30, 2018, which FEMA denied on August 14, 2018 due to FDEM's alleged untimely forwarding of the City's First Appeal.[8]  *Id.* at ¶¶ 69-72.

---

Appeal in a second First Appeal Determination on June 14, 2018 citing FDEM's untimely forwarding of the appeal.  DB Compl. ¶¶ 92-97.

[7] FDEM forwarded Deerfield Beach's second Second Appeal on October 9, 2018, less than 58 days after receiving it from the City.  DB Compl. ¶ 105.

[8] FDEM forwarded Pembroke Pines' Second Appeal on June 22, 2018 less than 54 days after receiving it from the City.  PP Compl. ¶ 71.

## THE CITIES' CLAIMS

As best as can be discerned from the Complaints, the Cities' Response to the Motion to Dismiss, and their Notice in Response to the Court's March 3, 2020, Order, the Complaint asserts the following causes of action:

1. A direct cause of action under 42 U.S.C. § 5205(c) asserting that FEMA is statutorily prohibited from deobligating the funds in question;

2. An action under the Administrative Procedure Act ("APA") asking this Court to overrule FEMA's decision not to consider the merits of the deobligation decision, including whether § 5205(c) applies, because there was an untimely appeal;[9]

3. An action under the APA asking this Court to rule that FEMA's denial of the appeals as untimely is a new policy that cannot be applied retroactively to the Cities.

The Cities' pleadings hint that they may be asserting other legal claims. For example, the Complaints allege that the Cities timely submitted their appeals to FDEM, which is the agent of FEMA, but do not further allege why this fact supports a claim for relief. LWB Compl. ¶ 101; DB Compl. ¶ 121; PP Compl. ¶ 89. Also, several paragraphs in the Complaints allege that FEMA has not complied with the statutory deadlines for responding to appeals. *See e.g.* LWB Compl. ¶ 61; DB Compl. ¶ 83; PP Compl. ¶ 64. The Cities do not articulate how FEMA's alleged non-compliance supports a claim for relief. Similarly, the Complaints allege that FDEM had authority to extend the appeal deadline, but do not allege that FDEM exercised that authority, here. LWB

---

[9] The term "untimely appeal" will be used to refer to an appeal that was not forwarded by the State grantee to FEMA within the deadlines set by 206.206(c).

Compl. ¶ 80; DB Compl. ¶ 101; PP Compl. ¶ 75.[10] After careful review, the Court has not identified anything other than the three causes of action listed above that arguably rises to the level of a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Therefore, only those claims will be evaluated.

## DISCUSSION

### A. *Motion to Dismiss Standard*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

---

[10] The Complaints acknowledge that FDEM can grant an extension only if it asks for additional information from the subgrantee. LWB Compl. ¶ 80; DB Compl. ¶ 121; PP Compl. ¶ 75. The Complaints do not allege that FDEM asked for additional information from any of the Cities.

8

B.  *Shotgun Pleading*

The Complaints are shotgun pleadings that do not conform to Federal Rules of Civil Procedure 8(a)(2) and 10(b) because they allege multiple causes of action in the same count. *See generally Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying most common forms of shotgun pleadings). Shotgun pleadings can take many forms, but "[t]he most common type – by a long shot – is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Counts II and III commit this "mortal sin." *Id.* at 1322. A close relative is the "sin of not separating into different counts each cause of action or claim for relief." *Id.* at 1323. Count I does that. The Cities acknowledge that Count I of the Complaints alleges "both a cause of action arising directly from the Stafford Act, 42 U.S.C. § 5205(c), and an action seeking judicial review of FEMA's violation of that statute." ECF No. 34 at 2. Although not entirely clear, it appears that Count II may also be alleging multiple independent claims for relief. The Complaints must be dismissed as shotgun pleadings.

C.  *Subject Matter Jurisdiction*

Independently, the Complaints must be dismissed for lack of subject matter jurisdiction. There has not been final agency action on Lake Worth Beach's administrative appeal. Congress has not waived sovereign immunity to allow a direct cause of action under § 5205(c). The remaining claims allege discretionary acts by FEMA for which sovereign immunity has not been waived.

The Court cannot consider the merits of a claim until subject matter jurisdiction is established. *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).

9

"The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation. . ." *Arbaugh v. Y&H Corp.*, 546 U. S. 500, 506 (2006). Subject matter jurisdiction can be attacked facially or factually. As Judge Cohn has explained:

> Jurisdictional challenges under Rule 12(b)(1) are either facial or factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-1529 (11th Cir. 1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint and the court takes the allegations in the complaint as true. *Id.,* at 1529. With facial attacks, a plaintiff has the similar safeguards as those present under Rule 12 (b)(6). *Id.* Generally courts are confined to the four-corners of the complaint and any documents attached thereto. *Bickley v. Caremark Rx, Inc.,* 461 F.3d 1325, 1329 (11th Cir. 2006). Without converting the motion to dismiss into a motion for summary judgment, the Court may also consider documents that are part of the public record such as documents filed in this Court or others. *See Universal Express, Inc. v. U.S. S.E.C.,* 177 Fed. Appx. 52, 53-54 (11th Cir. April 18, 2006); *Marko Capital of America, Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1350 (S.D. Fla. 2006).

*Lady of Am. Franchise Corp. v. Cunningham*, No. 08-61110-CV, 2008 WL 11333325, at *2 (S.D. Fla. Nov. 26, 2008). A complaint must contain sufficient non-conclusory allegations to create a plausible inference that subject matter jurisdiction exists. *Storms v. Haugland Energy Grp., LLC*, No. 18-CV-80334, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018) (J. Reinhart), *report and recommendation adopted*, No. 18-CV-80334-BB, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018) (applying *Iqbal* and *Twombly* pleading standard to jurisdictional allegations); *accord Wood v. Maguire Automotive, LLC,* 508 Fed. Appx. 65 (2d Cir. 2013) (complaint failed to properly allege subject matter jurisdiction because allegation of amount in controversy was "conclusory and not entitled to a presumption of truth.") (citing *Iqbal* ).

Here, FEMA makes a facial challenge that this Court lacks subject matter jurisdiction over all of the Cities' claims because the United States has not waived its sovereign immunity. ECF No. 22 at 8-9. The United States has sovereign immunity from lawsuits unless Congress

10

explicitly waives that immunity. *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S. Ct. 2698, 2701–02, 69 L. Ed. 2d 548, 160 (1981); *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096–97, 135 L. Ed. 2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text"). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Federal courts have jurisdiction over suits against the United States and its agencies only to the extent that sovereign immunity has been waived." *Thompson v. McHugh*, 388 Fed. Appx. 870, 872 (11th Cir. 2010). Where subject matter jurisdiction is challenged on the basis of sovereign immunity, "Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity." *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

a. <u>The Court lacks subject matter jurisdiction over Lake Worth Beach's claims.</u>[11]

There is no subject matter jurisdiction over Lake Worth Beach's claims because there is no final agency action, which is a prerequisite for judicial review.

Congress has waived sovereign immunity to allow for limited judicial review under the APA. *See* 5 U.S.C. § 701 *et. seq.* The APA limits the scope of judicial review to agency action(s) "reviewable by statute and final agency action for which there is no other adequate remedy in a court. . ." 5 U.S.C. § 704. With exceptions not applicable here, judicial review is limited to final agency action. *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943 (D.C. Cir. 2012) ("If there was no final agency action ..., there is no doubt that appellant would lack a cause of action under the APA.") citing *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006). "To be considered 'final,' an agency's action: (1) 'must mark the consummation of the agency's

---

[11] The Court raises this jurisdictional issue *sua sponte*.

decision making process—it must not be of a merely tentative or interlocutory nature;' and (2) 'must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) *citing Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Agency action becomes final and subject to judicial review "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).

When FEMA proposes to deobligate funds, the applicable regulations allow for two levels of appeal. 44 C.F.R § 206.206(c). Final agency action occurs only after those appeals are completed. *Id.* § 206.206(e)(3). Lake Worth Beach's Complaint does not allege that FEMA has adjudicated Lake Worth Beach's second appeal. *See* LWB Compl. ¶ 4 (conceding that FEMA has not yet decided second appeal.) Therefore, there is no subject matter jurisdiction over Lake Worth Beach's APA claims.[12]

b. <u>There is no subject matter jurisdiction for a direct cause of action under Section 5205(c).</u>

Congress has not waived sovereign immunity to allow a direct cause of action under § 5205(c) of the Stafford Act. That statute states in pertinent part:

> A State or local government shall not be liable for reimbursement or any other penalty for any payment made under this chapter if—
>
> > (1) the payment was authorized by an approved agreement specifying the costs;
> >
> > (2) the costs were reasonable; and
> >
> > (3) the purpose of the grant was accomplished.

---

[12] The Court will continue to use the term "Cities" to refer to Pembroke Pines and Deerfield Beach from this point forward.

42 U.S.C. § 5205(c). It prohibits certain conduct by FEMA but is silent as to the remedy available if FEMA violates the statute. The Cities have not cited to any unequivocal statutory text waiving sovereign immunity for a direct cause of action under § 5205(c), nor have they cited a prior case recognizing a direct cause of action under § 5205(c). Because the text of the Stafford Act does not unequivocally waive sovereign immunity, this court lacks subject matter jurisdiction to entertain a direct cause of action. *See Lane*, 518 U.S. at 192; *accord Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1001 (9th Cir. 1998) *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 130 S. Ct. 2323, 176 L. Ed. 2d 1131 (2010) ("Since the Stafford Act does not provide for a private right of action upon which the plaintiffs may rely. . ."); *Ameika v. Moss*, 628 Fed. Appx. 86, 88 n.15 (3d Cir. 2015) ("The District Court also properly dismissed the Stafford Act claim. . . because the Act does not create a private right of action."). The Cities' remedy, if any, for FEMA's alleged failure to comply with § 5205(c) must be through the procedures laid out in the APA.

    c. <u>The Discretionary Function Exception applies to the Cities' remaining claims.</u>

FEMA correctly argues that there is no subject matter jurisdiction over the Cities' remaining claims because of the discretionary function exception to the APA's waiver of sovereign immunity. ECF No. 22 at 3. Because this exception goes to this Court's subject matter jurisdiction, the Cities bear the burden of showing by a preponderance of the evidence that the exception does not apply.

The APA does not waive sovereign immunity (and therefore prohibits suits against the United States) where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Consistent with this provision of the APA, the Stafford Act invokes sovereign immunity for FEMA's "exercise or performance of . . . a

13

discretionary function or duty." 42 U.S.C. § 5148 ("The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter."); *see Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir. 1987) ("By enacting 42 U.S.C. sec. 5148, Congress indicated its intent to preclude judicial review of all disaster relief claims based upon the discretionary actions of federal employees.").

To decide if an agency action is a discretionary function, the court applies the two-part test from *Berkovitz v. United States*, 486 U.S 531 (1988). First, the action must have been "a matter of choice for the acting employee." *Id.* at 536. "Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes the course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Id.; e.g. Rosas,* 826 F.2d at 1008 (discretionary function exception did not apply to constitutional claim because complying with the constitution was not discretionary).

Second, if the decision involves an element of judgment, it must be the kind of judgment "that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy.'" *Berkovitz*, 486 U.S. at 536-37 (citing *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984) (applying Federal Tort Claims Act)).

> "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The

14

> focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."

*United States v. Gaubert*, 499 U.S. 315, 324–25 (1991).

One preliminary, but important, point: even viewed in the light most favorable to the Cities, the Complaints do not allege that FDEM submitted the appeals to FEMA within the deadlines set by the Stafford Act or its implementing regulations. Rather, they argue that FEMA's handling of the untimely appeals was inconsistent with FEMA's past practices and applicable policies for such appeals. Count II alleges:

> FEMA's assertion in its Second Appeal Decision that it lacks the authority to decide the substantive issues of an appeal due to the State Grantee's alleged failure to timely forward it, is inconsistent both with FEMA policy at the time of Hurricanes Frances, Jeanne, and Wilma, which permitted the State Grantee to extend the regulatory deadline provided in 44 C.F.R. § 206.206(c), and also with multiple FEMA decisions exercising its authority to review and to approve appeals even after a State Grantee had not forwarded the appeal with a recommendation within the 60 days provided in FEMA's regulation.

LWB Compl. ¶ 100. Likewise, Count III alleges that FEMA is improperly retroactively applying a policy for how it will handle untimely appeals. Therefore, for purposes of the Motion to Dismiss, the Court treats the appeals as untimely.

FEMA argues that its decision to refuse to consider the merits of an untimely appeal is a discretionary function that this Court lacks subject matter jurisdiction to review:

> [T]he premise urged by the Cities here—that FEMA ought to have considered the Cities' appeals on the merits despite their untimeliness—unquestionably arises from a purely discretionary act. Procedurally denying the appeals is—as described above—a straightforward application of law specifically prescribing the course of action for FEMA to follow. Declining (implicitly) to issue an extension of the filing deadline so that FEMA can substantively consider an untimely appeal is a discretionary function for which FEMA has not waived sovereign immunity.

ECF No. 22 at 22 (citing *Graham*, 149 F.3d at 1002 n. 4)

15

The Cities have not met their burden of proving that FEMA's decision whether to adjudicate an untimely appeal on the merits (which could also be viewed as extending the deadline for filing a timely appeal) is not a discretionary function. The deadlines for appealing FEMA deobligation decisions are claim processing rules. *See Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (distinguishing claim processing rules from jurisdictional bars). Claim processing rules "are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times. Filing deadlines . . . are quintessential claim-processing rules." *Id.* (citations omitted).

Applying the first *Berkovitz* factor, FEMA's decision whether to consider an untimely appeal involves a choice. The Cities have not identified any legal authority that required FEMA to consider their untimely appeals.

Turning to the second *Berkovitz* factor, a claim processing rule is the kind of agency action that is "susceptible to policy analysis." *See Gaubert*, 499 U.S. at 324–25. As FEMA argues, claim processing rules implicate multiple policy considerations, not the least of which is timely concluding some matters so that resources can be reallocated to others:

> Determinations regarding the extraordinary consideration of untimely appeals implicate the allocation of limited funds, systemic fairness, administrative regularity, finality, and other decisions regarding the funding of eligible projects, which are the exact types of policy decisions that are best left to the agencies without court interference.

ECF No. 22 at 23; *see also Fang v. United States*, 140 F.3d 1238, 1241–42 (9th Cir.1998) (decisions involving "the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit."). The Cities have failed to show that a claim processing rule is not the kind of action that is susceptible to policy analysis.

For these reasons, even if the Complaints were not shotgun pleadings, they would have to be dismissed for lack of subject matter jurisdiction.

### D.  *Leave to Amend*

Finally, the Court must consider whether it is appropriate to grant the Cities leave to amend the Complaints. Pursuant to Federal Rule of Civil Procedure 15(b) the "court should freely give leave when justice so requires." Where a complaint is dismissed as a shotgun pleading, the plaintiff generally is given one chance to correct the pleading deficiencies. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295-96 (11th Cir. 2018). "A district court should not deny leave to amend unless there has been undue delay, the amendment would unduly prejudice the opposing party, or the amendment would prove futile. Indeed, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *So. Beach Hotel, LLC v. Molko*, No. 09-21393-CIV, 2009 WL 10667895, at *3 (S.D. Fla. Oct. 14, 2009) (J. Altonaga) (citations omitted).[13]

Granting leave to replead a direct cause of action under Section 5205 would be futile because Congress has not waived sovereign immunity for this kind of claim.

Lake Worth Beach's claims could conceivably be repled after there is final agency action. Any dismissal of those claims should be without prejudice.

The Cities' remaining claims are all predicated on the incorrect premise that this Court has subject matter jurisdiction to review FEMA's handling of the Cities' untimely appeals: Count I alleged that FEMA wrongly applied § 5205(c) to the merits of the Cities' untimely appeals; Count

---

[13] No motion for leave to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a) has been submitted and the deadline for doing so has passed. Nevertheless, FEMA has not asserted that granting leave to amend would be untimely or unduly prejudicial. *See* ECF No. 28 at 11 (suggesting leave to amend as an alternative remedy if FEMA's motion to dismiss is granted).

II alleges that FEMA denied the Cities' right to appeal by not considering their untimely appeals; Count III alleges that FEMA improperly invoked a new policy that denied the Cities an appeal on the merits even though their appeals were untimely. Nevertheless, I cannot eliminate the possibility that, consistent with Rule 11, the Cities could file non-shotgun complaints that establish subject matter jurisdiction (for example, by showing that FEMA's decisions were not discretionary) and state a plausible claim for relief that would overcome a motion to dismiss. Therefore, I cannot conclude that granting leave to amend would be futile.

## CONCLUSION

The Complaints are shotgun pleadings which must be dismissed. Alternatively, the Court lacks subject matter jurisdiction over the claims asserted in the Complaints.

## RECOMMENDATION

WHEREFORE, it is **RECOMMENDED** that the Motion to Dismiss (ECF No. 22) be **GRANTED** with leave to file an Amended Complaint.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Raag Singhal, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 13th day of April, 2020, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE